IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **Joe Hand Promotions, Inc.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-2526 |
| | ) | |
| **Domenico Rizzi, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On May 29, 2013, Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") filed a Motion for Summary Judgment (the "Motion") against Defendant Domenico Rizzi. ("Rizzi"). (Mot., ECF No. 23.) Rizzi responded on July 12, 2013 (the "Response"). (Resp., ECF No. 26.) Joe Hand replied on July 25, 2013. (Reply, ECF No. 27.) Joe Hand asks the Court to find that Rizzi illegally and willfully intercepted satellite communications of two UFC fights to which Joe Hand had licensing rights and order Rizzi to pay statutory damages and litigation fees and costs. (Mot. Mem. of Law, ECF No. 23-2 at 1-2.) For the following reasons, the Motion is GRANTED.

I.  **Background**

The facts are undisputed except as otherwise stated. Joe Hand contracted for the right to distribute the July 3, 2010 UFC 116: Lesnar v. Carwin broadcast, and the August 7, 2010 UFC 117: Silva v. Sonnen broadcast, including all of the undercard bouts (the "Events"). (Plaintiff Statement of Undisp. Facts, ECF 23-1 ¶ 2.) To safeguard against unauthorized exhibition of the Events, satellite transmission was electronically scrambled so that the Events were unavailable to the general public. (Id. ¶ 11.) If Joe Hand authorized a commercial establishment to broadcast one of the Events, Joe Hand would provide electronic decoding equipment and the satellite coordinates necessary to receive the signal, or would notify the establishment's satellite provider to unscramble the reception, depending on the establishment's equipment and provider. (Id.) Commercial establishments that contracted with Joe Hand to show the Events had to pay a fee based on the capacity of the establishment. (Id. ¶ 12.)

Domenico Rizzi owns and manages Rizzi Pizza (the "Establishment"). (Id. ¶ 3.) The Establishment advertised on its Facebook page that it would show each of the Events. (Mot. Exhibit C(1), ECF No. 23-10; Mot. Exhibit C(2), ECF No. 23-11.) Attendees paid a three-dollar cover to enter on each evening. (Mot. Exhibit A2, ECF No. 23-5; Mot. Exhibit A2(1), ECF No. 23-6.) As advertised, the Establishment exhibited the Events on

three screens without authorization from Joe Hand. (Id. ¶ 4; Mot. Exhibit A2, ECF 23-2.) Rizzi was not present at the Establishment during the Events and had no personal knowledge of the violations. (Rizzi Affidavit, ECF No. 26-1 ¶¶ 5, 6, 8.)

Although the parties dispute the capacity of the Establishment and the approximate number of patrons present during the Events, the evidence suggests that Rizzi's estimation is correct. One investigator for Joe Hand submitted a sworn affidavit that she was present during the July 3, 2010 event and conducted three headcounts, counting 49, 52, and 55 people, respectively. (Mot. Exhibit A2, ECF No. 23-5.) In her opinion, the Establishment has a capacity of approximately 100 people. (Id.) A different investigator for Joe Hand was present during the August 7, 2010 fight, counting 200, 215, and 210 people in the Establishment. (Mot. Exhibit A2, ECF No. 23-5.) He estimated that the Establishment has a capacity of 400 people. (Id.) Rizzi submitted a Certificate of Occupancy consistent with the estimation of the first of Joe Hand's investigators, stating that 99 people was the maximum capacity of the Establishment. (Resp. Exhibit B, ECF 26-2.)

Rizzi had previously contracted with Joe Hand to show a UFC fight. (Resp. Ex. C, ECF No. 26-3; Resp. Ex. D, ECF No. 26-4.) Joe Hand charged Rizzi a license fee of $550 for the event. (Id.)

## II. Jurisdiction and Standard of Review

Federal district courts have original jurisdiction over civil actions arising under federal laws. 28 U.S.C. § 1338. Joe Hand brings this action under 47 U.S.C § 605.

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" Phelps v. State

Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in [its] favor." Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in its favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The local rules of this district establish specific requirements that must be satisfied by the non-moving party. The party opposing summary judgment must respond to each fact set forth by the moving party by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the summary judgment motion only, or by demonstrating that the fact is disputed. W.D. Tenn. L.R. 56.1(b).

### III. Analysis

Joe Hand argues that Rizzi violated federal law prohibiting the unauthorized exhibition of interstate satellite transmissions and that Rizzi's violations were willful, entitling Joe Hand to additional damages. (Mot. Mem. of Law, ECF No. 23-2 at 2.) Joe Hand asks the Court to award initial statutory damages of $10,000, additional damages of $50,000 for willfulness, and attorney's fees and costs. (Id.) Joe Hand seeks to hold Rizzi personally liable for the alleged violations. (Id. at 13.) Rizzi argues that, because he was not aware of the piracy and was not present during the Events, the violations were not willful. (Resp., ECF No. 26 at 2.)

#### A. Strict Liability under 47 U.S.C. 605(a)

The Communications Act provides,

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, . . . or meaning of such intercepted communication to any person.

47 U.S.C. 605(a). That provision applies to encrypted satellite transmissions. Kingvision Pay-Per-View, LTD. v. Scott E's Pub, Inc., et al., 146 F. Supp. 2d 955, 958 (E.D. Wisc. 2001) (citation omitted). There is no scienter requirement to establish liability under the statute. Joe Hand Promotions, Inc. v. Marshall, No. @:10-CV-00073, 2012 WL 300542, *3 (M.D. Tenn. Feb. 1, 2012). If an entity's rights are violated, it may choose actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). If the entity elects statutory damages, "the party aggrieved may recover an award . . . for each violation . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

There is no dispute that Rizzi violated § 605(a) and that Joe Hand is entitled to damages. Rizzi unlawfully intercepted two separate transmissions to which Joe Hand had licensing rights. (Plaintiff Statement of Undisp. Facts, ECF 23-1 ¶¶ 2, 4, 11.) Because Joe Hand has elected statutory damages, it is within the Court's discretion to award damages within the statutory range of $1,000 to $10,000 for each violation. § 605(e)(3)(C)(i)(II). In determining the award, the Court begins with the actual damages from the violation, but also considers loss of goodwill from other establishments that properly purchased the Events but faced unauthorized competition from Rizzi, as well as the deterrent effect an award would have on

7

future violations.  See, e.g., Kingvision Pay-Per-View, 146 F. Supp. 2d at 960.

Using the prior contractual relationship between the parties as an indicator, Joe Hand suffered actual damages of $1,100.  (Resp. Ex. D, ECF No. 26-4.)  Tripling that amount, to $3,300, adequately compensates Joe Hand for any loss of goodwill and has a deterrent effect on future violations.

**B. Enhanced Liability for Willful Violations**

If the Court determines that a violation was committed "willfully and for the purpose of direct or indirect commercial advantage or private gain," it may "in its discretion . . . increase the award of damages . . . by an amount of not more than $100,000 for each violation."  47 U.S.C. § 605(e)(3)(C)(i)(II)(ii).

"The Supreme Court has defined 'willful' in the context of civil statutes as conduct showing 'disregard for the governing statute and an indifference to its requirements.'"  Marshall, 2012 WL 300542 at *4 (citing Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)).  "Signals do not descramble spontaneously."  Time Warner Cable v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999).  Showing that an entity could not have intercepted a satellite broadcast "innocently or by mistake" demonstrates willfulness.  Kingvision Pay-Per-View, 146 F. Supp. 2d at 959.

Showing an unauthorized broadcast to paying customers is generally sufficient to establish that the transmission was "for the purpose of . . . commercial advantage." See, e.g., Garden City Boxing Club, Inc. v. Guzman, No. 03Civ.8776(DC)(JCF), 2005 WL 1153728, *3 (S.D.N.Y. Apr. 26, 2005)("[T]he exhibition of the fight undoubtedly generated commercial profits for the defendant."). Advertising that the fight would be shown and charging customers a cover to enter further demonstrate that the purpose of the transmission is commercial advantage. See Kingvision Pay-Per-View, 146 F. Supp. 2d at 959.

To determine damages within the statutory range, courts have used a multiplier of the base statutory damages determined by the egregiousness of the defendant's violation. See, e.g., Googies Luncheonette, 77 F. Supp. 2d at 491. There, the court awarded additional damages of three times the base amount for a defendant that was legally connected to the service, but did not pay for the particular broadcast, and four times the base amount for a defendant that had no authorized service from the provider. Id.; see also Kingvision Pay-Per-View, 146 F. Supp. 2d at 959 (adopting the Googies Luncheonette approach). The court in Googies Luncheonette multiplied by a factor of eight the base award for a defendant with a history of similar infractions. See id. In Kingvision Pay-Per-View, the court ordered additional damages of five times the base award,

9

concluding that the violation was egregious because the defendant "advertised the event, charged a cover charge, and showed the event on five television monitors." 146 F. Supp. 2d at 961 (emphasis in original).

Rizzi willfully violated the statute for the purpose of commercial gain, and Joe Hand is entitled to additional damages. Rizzi had previously contracted with Joe Hand to show a fight, demonstrating actual knowledge of the law and the correct process of obtaining authorization. (Resp. Ex. D, ECF No. 26-4.) Rizzi disregarded the statute by intercepting and unscrambling the satellite transmission and exhibiting the Events on three television screens. (Plaintiff Statement of Undisp. Facts, ECF 23-1 ¶ 4.) The purpose was to gain commercial advantage, as Rizzi advertised the Events on its Facebook page and charged a three-dollar cover charge at the door. (Mot. Exhibit C(1), ECF No. 23-10; Mot. Exhibit C(2), ECF No. 23-11.); See Guzman, 2005 WL 1153728 at *3. Rizzi is a repeat offender, willfully disregarding the statute twice in several months. Multiplying the base award by a factor of six, which results in additional damages of $18,600, reflects the egregiousness of the violations and will adequately deter future violations.

**C. Vicarious Liability**

To establish vicarious liability for a violation of § 605(a), willful or otherwise, a plaintiff must show that the defendant had "a right and ability to supervise the violations, and that she had a strong financial interest in such activities." J & J Sports Productions, Inc. v. Ribeiro, 562 F.Supp.2d 498, 501 (S.D.N.Y. 2008) (citation omitted).

Domenico Rizzi owns and manages the Establishment, which gave him the right and ability to supervise the violations and the requisite financial interest, notwithstanding his decision not to be present during the Events. (Plaintiff Statement of Undisp. Facts, ECF 23-1 ¶ 3.) Rizzi is vicariously liable for each violation.

### D. Court Costs and Fees

The Communication Act requires that the Court award "full costs, including reasonable attorney's fees, to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Joe Hand has not presented evidence of its fees and costs. In Marshall, a similar case in which Joe Hand was the plaintiff, the Court awarded $6,243.75, in addition to damages, to reflect the filing fees, service of process costs, attorney's fees, and investigative expenses detailed by Joe Hand. Marshall, 2012 WL 300542 at *4. Without details of Joe Hand's fees and costs in this case, the Court is unable to make an award.

### IV. Conclusion

11

For the foregoing reasons, the Court GRANTS Joe Hand's Motion for Summary Judgment, and ORDERS Rizzi to pay base-level damages in the amount $3,100 and additional damages of $18,600, for a total of $21,700.

So ordered this 3rd day of December, 2013.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE
